FILED
2016 Nov-07  PM 02:50
U.S. DISTRICT COURT
N.D. OF ALABAMA

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## NORTHEASTERN DIVISION

| | | |
|---|---|---|
| **DAVID HORTON,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Civil Action No. 5:16-cv-00923-CLS** |
| | ) | |
| **MORGAN COUNTY SHERIFF'S** | ) | |
| **DEPARTMENT, *et al.*,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff, David Horton, filed this action in the Circuit Court of Madison County, Alabama, but defendants removed it, asserting federal question jurisdiction under 28 U.S.C. § 1331.[1]  Plaintiff asserts a claim for unreasonable and excessive force under 42 U.S.C. § 1983 against Morgan County Sheriff Ana Franklin and Deputy Sheriff Brian Fulford, as well as supplemental state-law claims for negligence or wantonness against both of those defendants and the Morgan County Sheriff's Department.[2]  The case presently is before the court on motions filed by each of the

---

[1] *See* doc. no. 1 (Notice of Removal).

[2] *See* doc. no. 1-1 (Complaint).  This court is cryptically told that defendant Brian Fulford is no longer employed as a Morgan County Deputy Sheriff.  *See* doc. no. 1 (Notice of Removal), ¶ 1 (describing Fulford as a "former Morgan County Deputy Sheriff"); doc. no. 3 (Sheriff Department's Brief), at 1 (same); and doc. no. 5 (Sheriff Franklin's Brief), at 1 (same).  Even so, the reason for his departure is not explained.

defendants,[3] seeking dismissal of the complaint for failure to state claims upon which relief can be granted.  *See* Fed. R. Civ. P. 12(b)(6).  Plaintiff was ordered to file a response to the motions,[4] but he failed to do so.[5]

Federal Rule of Civil Procedure 12(b) permits a party to move to dismiss a complaint for, among other reasons, "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  That rule must be read together with Rule 8(a), which requires that a pleading contain only a "short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  While that pleading standard does not require "detailed factual allegations," *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 550 (2007), it does demand "more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citations omitted).  As the Supreme Court stated in *Iqbal*:

A pleading that offers "labels and conclusions" or "a formulaic

---

[3] *See* doc. no. 2 (Sheriff's Department Motion to Dismiss); doc. no. 4 (Sheriff Franklin's Motion to Dismiss); doc. no. 6 (Deputy Fulford's Motion to Dismiss).

[4] *See* doc. no. 9 (Submission Order entered by Magistrate Judge Harwell G. Davis, III, on June 3, 2016, requiring plaintiff to respond to defendants' motions to dismiss within fourteen days).

[5] In a case in which a defendant fails to file an answer or otherwise respond to a plaintiff's complaint, the mere entry of default on the record by the Clerk of Court is not sufficient, by itself, to support the entry of judgment in favor of the plaintiff.  Instead, the court must independently determine whether there is a sufficient basis in the pleadings for entry of judgment.  *See*, *e.g.*, *Alfa Corp. v. Alfa Mortgage, Inc.*, 560 F. Supp. 2d 1166, 1174 (M.D. Ala. 2008) (citing *Nishimatsu Construction Co., Ltd. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975)).  The present circumstance is analogous:  even though plaintiff failed to respond to the defendants' motions to dismiss, the court still must independently determine on the basis of the pleadings whether plaintiff states claims on which relief may be granted.

2

recitation of the elements of a cause of action will not do." [*Twombly*, 550 U.S., at 555]. Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement." *Id.*, at 557.

To survive a motion to dismiss founded upon Federal Rule of Civil Procedure 12(b)(6), [for failure to state a claim upon which relief can be granted], a complaint must contain sufficient factual matter, accepted as true, to "state a claim for relief that is plausible on its face." *Id.*, at 570. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.*, at 556. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. *Ibid.* Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.*, at 557 (brackets omitted).

Two working principles underlie our decision in *Twombly*. *First*, the tenet that a court must accept as true all of the allegations contained in a complaint is *inapplicable to legal conclusions*. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. *Id.*, at 555 (Although for the purposes of a motion to dismiss we must take all of the factual allegations in the complaint as true, we "are not bound to accept as true a legal conclusion couched as a factual allegation" (internal quotation marks omitted)). Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions. *Second*, only a complaint that states a plausible claim for relief survives a motion to dismiss. *Id.*, at 556. Determining whether a complaint states a plausible claim for relief will, as the Court of Appeals observed, be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. 490 F.3d, at 157-158. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged — but it has not "show[n]" — "that the pleader is entitled to relief." Fed. Rule

Civ. Proc. 8(a)(2).

In keeping with these principles a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. *When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.*

*Iqbal*, 556 U.S. at 678-79 (emphasis supplied) (first and third alterations supplied, other alterations in original). Following consideration of the pleadings and briefs, the court concludes that the motions are due to be granted in part and denied in part.

## I. FACTUAL ALLEGATIONS

The complaint contains two Counts. The first asserts claims against Deputy Bryan Fulford and Sheriff Ana Franklin in their individual and official capacities for a violation of plaintiff's Fourth and Fourteenth Amendment right to be free from unreasonable, excessive force.[6] The second asserts supplemental state-law claims against both of those defendants, as well as the Morgan County Sheriff's Department, for negligence or wantonness.[7] All claims are based upon the following allegations of fact which, for purposes of ruling upon defendants' motions, this court assumes to

---

[6] Doc. no. 1-1 (Complaint), ¶¶ 19-27.

[7] *Id.* at ¶¶ 28-31. *See also* 28 U.S.C. § 1367 (supplemental jurisdiction).

be true:[8]

5.      On or about April 15, 2014, Plaintiff was shopping in the
        Walmart store located on South Memorial Parkway in Huntsville,
        Alabama.

6.      While shopping he was confronted by Defendant Fulford after
        Defendant Fulford recognized him as having an outstanding
        warrant.

7.      Defendant Fulford was off-duty at the time he confronted Plaintiff
        and never made any attempt to properly identify himself to the
        Plaintiff.

8.      Plaintiff was startled by the aggressive confrontation and fled
        from Defendant Fulford.

9.      Defendant Fulford pulled his weapon, aimed and steadied
        himself, and then fired a shot at the Plaintiff while he was fleeing.

10.     Defendant Fulford did this in the middle of a busy Walmart
        seemingly without any regard for the safety and wellbeing [*sic*] of
        not only the Plaintiff but also all of the other shoppers that were
        present at the time he fired his weapon.   Some of the innocent
        bystanders were children.

11.     Plaintiff was struck in the backside by the bullet from Defendant
        Fulford's weapon.

12.     He was later transported to Huntsville Hospital for emergency
        treatment.

---

[8] When ruling upon a motion to dismiss, the court must assume that the facts set forth in a
plaintiff's complaint are true.  *See, e.g.*, *Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 453 (1994);
*Marsh v. Butler County*, 268 F.3d 1014, 1023 (11th Cir. 2001) (*en banc*).   Accordingly, the
quotations from plaintiff's complaint that follow this footnote are "the facts" for Rule 12(b)(6)
purposes, but may, or may not, be the actual facts.  *See, e.g.*, *Williams v. Mohawk Industries, Inc.*,
465 F.3d 1277, 1281 n.1 (11th Cir. 2006).

13.     Any reasonable law enforcement officer knows or should know that the conduct complained of herein constitutes an unreasonable and excessive use of force in violation of an individual's rights under the Fourth and Fourteenth Amendments to the United States Constitution.

14.     The aforesaid rights were clearly established at the time of the conduct giving rise to the claims asserted herein by Plaintiffs [*sic*].

15.     All acts complained of herein were performed under color of state law and pursuant to the policies, procedures and customs of Ana Franklin, as the Sheriff of Morgan County, Alabama.

16.     Plaintiff alleges that all Defendants' actions and/or inactions as set out in the Complaint were negligent, wanton, willful, malicious, fraudulent, in bad faith, beyond their authority, and/or under a mistaken interpretation of the law.

17.     Plaintiff further alleges that all actions and/or inactions of the Defendants were committed while in the performance of their duties in the line and scope of their employment.

18.     As a direct and proximate result of the acts complained of herein above, Plaintiff suffered and continues to suffer from physical injury, anguish, embarrassment, humiliation and emotional distress.

Doc. no. 1-1 (Complaint), ¶¶ 5-18.

## II. DISCUSSION

### A. Plaintiff's Official Capacity Claims

Claims asserted under 42 U.S.C. § 1983 against state or county officials in their "official capacity" are tantamount to suits against the state governmental entities

6

served by such defendants and, absent waiver or consent, are barred by the Eleventh Amendment to the United States Constitution.[9]  *See, e.g.*, *McMillian v. Monroe County*, 520 U.S. 781, 785 n.2 (1997) (observing that "a suit against a governmental officer 'in his official capacity' is the same as a suit 'against [the] entity of which [the] officer is an agent'") (alterations in original) (quoting *Kentucky v. Graham*, 473 U.S. 159, 165 (1985) (in turn quoting *Monell v. New York City Department of Social Services*, 436 U.S. 658, 690 n.55 (1978)); *see also, e.g.*, *Lassiter v. Alabama A & M University*, 3 F.3d 1482, 1485 (11th Cir. 1993) ("Official capacity actions seeking damages are deemed to be against the entity of which the officer is the agent.").

Alabama sheriffs are deemed to be "arms of the State" when engaged in law enforcement activities and, consequently, are entitled to Eleventh Amendment immunity when sued in an official capacity under § 1983 for retrospective money damages.  *McMillian*, 520 U.S. at 793 ("Alabama sheriffs, when executing their law enforcement duties, represent the State of Alabama, not their counties.").

---

[9] The Eleventh Amendment provides that:  "The Judicial Power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."  U.S. Const. amend. XI (1795).  Even though the plain language of that amendment appears to restrict only the diversity jurisdictional provisions of Article III, Section 2 of the Constitution, denying to federal courts jurisdiction to hear suits against states brought by two classes of plaintiffs — *i.e.*, "Citizens of another State" and "Citizens or Subjects of any Foreign State" — it has been "well established, though not expressly stated in the Constitution, that the Eleventh Amendment also prohibits a state from being sued by its own citizens."  *Lapides v. Board of Regents*, 251 F.3d 1372, 1374 (11th Cir. 2001) (citing *Hans v. Louisiana*, 134 U.S. 1, 15 (1890)).

It also is well established that Alabama deputy sheriffs are viewed as "an extension of the Sheriff" who employs them. *Carr v. City of Florence*, 916, F.2d 1521, 1526 (11th Cir. 1990); *see also Terry v. Cook*, 866 F.2d 373, 377 (11th Cir. 1989) ("Under Alabama law, a deputy sheriff is the general agent of and empowered to enter into business transactions for the sheriff."). As a consequence, Eleventh Amendment immunity extends to deputies sued in their official capacities under § 1983 for retrospective money damages because of their "traditional function under Alabama law as the Sheriff's alter ego." *Carr*, 916 F.2d at 1527.

Accordingly, plaintiff's § 1983 claims against Morgan County Sheriff Ana Franklin and Deputy Bryan Fulford in thier respective "official capacities" are due to be dismissed.

## B.   Plaintiff's Individual Capacity Claim Against Sheriff Franklin

As Sheriff Franklin observes in her brief, plaintiff's § 1983 claim for violation of his Fourth and Fourteenth Amendment right to be protected from excessive and unreasonable force appears to be asserted against only Deputy Fulford.[10]  Even so, Count I of the complaint states that, "[a]t all times relevant hereto, Defendant Fulford was acting as an agent, deputy, employee or officer of Defendant Ana Franklin, the

---

[10] *See* doc. no. 5 (Sheriff's Brief), at 12.

Sheriff of Morgan County, Alabama."[11]  Out of an abundance of caution, therefore, this court will construe that statement as a cryptic attempt to assert the same claim against Sheriff Franklin.  Even as so construed, the claim still is due to be dismissed.

Sheriff Franklin was not personally involved in the act that caused plaintiff's injuries.  Hence, she can be held legally accountable only under a theory of vicarious liability, as Deputy Fulford's employer and supervisor.  It is well settled, however, that supervisory officials cannot be held liable under § 1983 for the unconstitutional acts of their subordinates on the basis of theories of *respondeat superior* or vicarious liability.  *See, e.g.*, *West v. Tillman*, 496 F.3d 1321, 1328 (11th Cir. 2007); *Cottone v. Jenne*, 326 F.3d 1352, 1360 (11th Cir. 2003); *Hartley v. Parnell*, 193 F.3d 1263, 1269 (11th Cir. 1999).[12]  Supervisory officials can be held liable only "if they personally participated in the allegedly unconstitutional conduct or if there is a causal connection between [their] actions . . . and the alleged constitutional deprivation."

---

[11] Doc. no. 1-1 (Complaint), ¶ 20 (alteration supplied).

[12] The Supreme Court held in *Monell v. Department of Social Services of New York*, 436 U.S. 658 (1978), that a local governmental official such as Morgan County Sheriff Franklin cannot be held vicariously liable for violations of § 1983 by one of her employees under a theory of *respondeat superior*.  In other words, the sheriff "cannot be held liable solely because [she] employs a tortfeasor."  *Id.* at 691 (alteration supplied).  Instead, a county sheriff may be held accountable in damages for the conduct of a deputy sheriff *only when* the plaintiff shows that execution of the local governmental entity's official "policy" or "custom" effectively was the cause of the injury complained of.  *Id.* at 694.  Stated somewhat differently, an Alabama county sheriff may be held liable under § 1983 "only for acts for which [the sheriff] is actually responsible, 'acts which the [sheriff] has officially sanctioned or ordered.'"  *Turquitt v. Jefferson County, Ala.*, 137 F.3d 1285, 1287 (11th Cir. 1998) (alterations supplied) (citing *Pembaur v. City of Cincinnati*, 475 U.S. 469, 479-80 (1986)).

9

*Tillman*, 496 F.3d at 1328 (alteration and ellipsis in original, citation omitted).  In order to establish a causal connection that could subject a non-participatory supervisory official to liability, a plaintiff must

> present sufficient evidence of either (1) a custom or policy [that] result[s] in deliberate indifference to constitutional rights or . . . facts [that] support an inference that the supervisor[s] directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so; or (2) a history of widespread abuse [that] put[] the responsible supervisor on notice of the need to correct the alleged deprivation, and he fails to do so.  The deprivations that constitute widespread abuse sufficient to notify the supervising official must be obvious, flagrant, rampant and of continued duration, rather than isolated occurrences.

*Tillman*, 496 F.3d at 1328-29 (alterations in original, citations omitted).

Plaintiff's complaint does not allege a custom or policy adopted by Sheriff Franklin that resulted in defendant Fulford's violation of plaintiff's constitutional rights.  It also contains no allegations showing a history of widespread abuse of constitutional rights by either Deputy Fulford or any other deputy sheriffs acting under the supervision of Sheriff Franklin.

Accordingly, plaintiff's presumed § 1983 claim against Sheriff Franklin for unreasonable and excessive force is due to be dismissed for failure to state a claim upon which relief can be granted.[13]

---

[13] *See also* doc. no. 5 (Sheriff's Brief), at 14-20.  Sheriff Franklin also contends that she is entitled to qualified immunity from plaintiff's claim for excessive and unreasonable force.  *See id.* at 20-23.  In view of the fact that this court has concluded that plaintiff failed to state a claim against

C.   **Plaintiff's Individual Capacity Claim Against Deputy Fulford**

When a state, county, or municipal official is sued personally, or in an "individual capacity," for money damages under 42 U.S.C. § 1983, he is entitled to invoke the doctrine of "qualified immunity" as a defense to the claim.   *See, e.g.*, *Kentucky v. Graham*, 473 U.S. 159, 165 (1985); *Busby v. City of Orlando*, 931 F.2d 764, 772 (11th Cir. 1991).   The doctrine of qualified immunity protects governmental officials who are sued under 42 U.S.C. § 1983 for money damages in their personal, or individual, capacities, but only so long as "their conduct violates no clearly established statutory or constitutional rights of which a reasonable person would have known."   *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).   The purpose of the doctrine is to allow government officials to carry out their discretionary duties without the fear of personal liability or harassing litigation.   *Anderson v. Creighton*, 483 U.S. 635, 638 (1987); *Lee v. Ferraro*, 284 F.3d 1188, 1193-94 (11th Cir. 2002). The doctrine protects "all but the plainly incompetent or one who is knowingly violating the federal law." *Hope v. Pelzer*, 536 U.S. 730, 752 (2002) (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986); *see, e.g.*, *Lee*, 284 F.3d at 1193-94; *Chesser v. Sparks*, 248 F.3d 1117, 1121–22 (11th Cir. 2001).   Because qualified immunity is a defense not only from *liability*, but also from *suit*, it is "important for a court to

---

Sheriff Franklin upon which relief may be granted, the court will not address her argument for qualified immunity.

ascertain the validity of a qualified immunity defense as early in the lawsuit as possible." *GJR Invs., Inc. v. County of Escambia*, 132 F.3d 1359, 1370 (11th Cir. 1998) (citation omitted). Hence, the motions to dismiss that are addressed in this opinion.

The evaluation of a claim of qualified immunity has three parts. An official asserting that he is entitled to the protection of qualified immunity must initially establish that "'he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred.'" *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002) (quoting *Courson v. McMillian*, 939 F.2d 1479, 1487 (11th Cir. 1991)).

There is no question about the fact that Deputy Fulford was exercising discretionary authority on the date, and at the place, of the acts complained of by plaintiff. Accordingly, the burden shifts to the plaintiff to show that qualified immunity is *not appropriate* by demonstrating the deprivation of a constitutional right that was clearly established at the time of the defendant's action. *See, e.g.*, *Saucier v. Katz,* 533 U.S. 194, 201 (2001);[14] *Wilson v. Layne*, 526 U.S. 603, 609 (1999) ("A

---

[14] The Supreme Court's opinion in *Saucier v. Katz*, 533 U.S. 194 (2001), held that a court required to rule upon a defendant's qualified immunity defense

> *must consider . . . this threshold question*: Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right? *This must be the initial inquiry*. *Siegert v. Gilley*, 500 U.S. 226, 232 (1991). In the course of determining whether a constitutional right was violated on the premises alleged, a court might find it necessary to set forth principles which will become the basis for a holding that a right is clearly established. This is the

court evaluating a claim of qualified immunity 'must first determine whether the

plaintiff has alleged the deprivation of an actual constitutional right at all, and if so,

proceed to determine whether that right was clearly established at the time of the

alleged violation.'") (quoting *Conn v. Gabbert*, 526 U.S. 286, 290 (1999)); *see also*

*McElligott v. Foley*, 182 F.3d 1248, 1254 (11th Cir. 1999) (same).[15]

> This order of procedure is designed to "spare a defendant not only unwarranted liability, but unwarranted demands customarily imposed upon those defending a long drawn out lawsuit." *Siegert v. Gilley*, 500 U.S. 226, 232, 111 S. Ct. 1789, 114 L. Ed. 2d 277 (1991). Deciding the constitutional question before addressing the qualified immunity

> process for the law's elaboration from case to case, and it is one reason for our insisting upon turning to the existence or nonexistence of a constitutional right as the first inquiry. The law might be deprived of this explanation were a court simply to skip ahead to the question whether the law clearly established that the officer's conduct was unlawful in the circumstances of the case.

> If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity. On the other hand, if a violation could be made out on a favorable view of the parties' submissions, the next, sequential step is to ask whether the right was clearly established. This inquiry, it is vital to note, must be undertaken in light of the specific context of the case, not as a broad general proposition; and it too serves to advance understanding of the law and to allow officers to avoid the burden of trial if qualified immunity is applicable.

*Saucier*, 533 U.S. at 201 (emphasis and ellipsis supplied).

[15] *See also County of Sacramento v. Lewis*, 523 U.S. 833, 841 n.5 (1998) ("[T]he better approach to resolving cases in which the defense of qualified immunity is raised is to determine first whether the plaintiff has alleged a deprivation of a constitutional right at all. Normally, it is only then that a court should ask whether the right allegedly implicated was clearly established at the time of the events in question.") (alteration supplied); *Hartley v. Parnell*, 193 F.3d 1263, 1268 (11th Cir. 1999) ("Therefore, we must first determine whether the facts, read in the light most favorable to [plaintiff], establish that [defendant]'s actions deprived her of any statutory or constitutional rights. If the answer is 'yes,' we must then consider whether those rights were clearly established at the time of the events in this case.") (alterations supplied).

13

question also promotes clarity in the legal standards for official conduct, to the benefit of both the officers and the general public.  See *County of Sacramento v. Lewis*, 523 U.S. 833, 840-842, n. 5, 118 S. Ct. 1708, 140 L. Ed. 2d 1043 (1998).

*Wilson*, 526 U.S. at 609.

The Supreme Court reconsidered the sequence in which the parts of the discretionary function test should be addressed in *Pearson v. Callahan*, 555 U.S. 223 (2009).  The opinion in that case concluded that, "while the sequence set forth [by the Court's prior opinion in *Saucier v. Katz, supra*,[16]] is often appropriate, it should no longer be regarded as mandatory."  *Id.* at 236 (alteration supplied).  Therefore, this court will assume for purposes of the following discussion that Deputy Fulford's conduct violated plaintiff's Fourth and Fourteenth Amendment rights, and proceed directly to the second, and dispositive, inquiry:  was the unlawfulness of Deputy Fulford's conduct "clearly established" on April 15, 2014?

When attempting to determine whether *the unlawfulness of a law enforcement officer's act* was clearly established on the date of the incident leading to suit (sometimes stated as the issue of whether *a constitutional right* was clearly established on the date that a plaintiff was injured), the most important question is: did the state of the law on the date of the defendant's act give him *fair warning* that his alleged treatment of plaintiff was unconstitutional?  *See*, *e.g.*, *Hope v. Pelzer,* 536

---

[16] *See supra* note 14.

U.S. 730, 741 (2002); *Williams v. Consolidated City of Jacksonville,* 341 F.3d 1261,

1270 (11th Cir. 2003).

The Supreme Court has rejected the requirement that the facts of previous cases

must always be "materially similar" to those involved in the action at issue when

attempting to determine whether it may be said that the unlawfulness of an official's

actions was "clearly established" by case-law precedent. *See Hope*, 536 U.S. at 739.

Instead, in order to say that the unlawfulness of an official's actions was "clearly

established" on the date of the event complained of by a plaintiff, the contours of the

defendant's act must have been

> "sufficiently clear that a reasonable official would understand that what
> he is doing violates that right.  This is not to say that an official action
> is protected by qualified immunity unless the very action in question has
> previously been held unlawful, *see Mitchell* [*v. Forsyth,* 472 U.S. 511,]
> 535, n. 12, 105 S. Ct. 2806, 86 L. Ed. 2d 411; but it is to say that in the
> light of pre-existing law the unlawfulness must be apparent." *Anderson
> v. Creighton,* 483 U.S. 635, 640, 107 S. Ct. 3034, 97 L. Ed. 2d 523
> (1987).

*Hope,* 536 U.S. at 741 (alteration in original).

As the Eleventh Circuit observed in *Vinyard v. Wilson,* 311 F.3d 1340 (11th

Cir. 2002), there are various ways in which the unlawfulness of a particular act may

be deemed to have been clearly established.

> First, the words of the pertinent federal statute or federal
> constitutional provision in some cases will be specific enough to

establish clearly the law applicable to particular conduct and circumstances and to overcome qualified immunity, even in the *total absence of case law.* This kind of case is one kind of "obvious clarity" case. For example, the words of a federal statute or federal constitutional provision may be so clear and the conduct so bad that case law is not needed to establish that the conduct cannot be lawful.

Second, if the conduct is not so egregious as to violate, for example, the Fourth Amendment on its face, we then *turn to case law.* When looking at case law, some broad statements of principle in case law are not tied to particularized facts and can clearly establish law applicable in the future to different sets of detailed facts. *See Marsh* [*v. Butler County, Ala.*], 268 F.3d [1014,] 1031-32 n.9 [(11th Cir. 2001)]. For example, if some authoritative judicial decision decides a case by determining that "X Conduct" is unconstitutional *without tying* that determination to a particularized set of facts, the decision on "X Conduct" can be read as having clearly established a constitutional principle: put differently, the precise facts surrounding "X Conduct" are immaterial to the violation. These judicial decisions can control "with obvious clarity" a wide variety of later factual circumstances. These precedents are hard to distinguish from later cases because so few facts are material to the broad legal principle established in these precedents; thus, this is why factual differences are often immaterial to the later decisions. But for judge-made law, there is a presumption against wide principles of law. And if a broad principle in case law is to establish clearly the law applicable to a specific set of facts facing a governmental official, it must do so "with obvious clarity" to the point that every objectively reasonable government official facing the circumstances would know that the official's conduct did violate federal law when the official acted.

Third, if we have no case law with a broad holding of "X" that is not tied to particularized facts, we then look at precedent *that is tied to the facts.* That is, we look for cases in which the Supreme Court or we, or the pertinent state supreme court has said that "Y Conduct" is unconstitutional in "Z Circumstances." We believe that most judicial precedents are tied to particularized facts and fall into this category. .

16

. . When fact-specific precedents are said to have established the law, a case that is fairly distinguishable from the circumstances facing a government official cannot clearly establish the law for the circumstances facing that government official; so, qualified immunity applies. On the other hand, if the circumstances facing a government official are not fairly distinguishable, that is, are materially similar, the precedent can clearly establish the applicable law.

*Vinyard,* 311 F.3d at 1350-52 (emphasis in original, alterations supplied). *See also*

*Ashcroft v. al-Kidd*, 536 U.S. 731, 741 (2011) ("We do not require a case directly on

point, but existing precedent must have placed the statutory or constitutional question

beyond debate.").

"The Fourth Amendment's freedom from unreasonable searches and seizures

encompasses the plain right to be free from the use of excessive force in the course

of an arrest." *Lee v. Ferraro*, 284 F.3d 1188, 1197 (11th Cir. 2002) (citing *Graham

v. Connor*, 490 U.S. 386, 394-95 (1989)). The reasonableness inquiry is an objective

one: "the question is whether the officers' actions are 'objectively reasonable' in

light of the facts and circumstances confronting them, without regard to their

underlying intent or motivation." *Graham,* 490 U.S. at 397 (citations omitted). In

other words, "[a]n officer's evil intentions will not make a Fourth Amendment

violation out of an objectively reasonable use of force; nor will an officer's good

intentions make an objectively unreasonable use of force constitutional." *Id*.

(citations omitted) (alteration supplied).

17

The court may consider a number of factors when determining whether the force applied was "objectively reasonable," including:  (1) the "severity, or lack of severity, of the alleged crime in issue," *id*. at 396; (2) "whether the person against whom the force was used posed an immediate threat to the safety of the police or others," *id*.; (3) "the need for the application of force," *Jackson v. Sauls*, 206 F.3d 1156, 1170 n.18 (11th Cir. 2000); (4) "the relationship between the need and the amount of force used," *id*.; (5) "the extent of the injury inflicted," *id*.; (6) "whether the force was applied in good faith or maliciously and sadistically," *id*.; (7) "the possibility that the persons subject to the police action are themselves violent or dangerous," *id*.; (8) "the possibility that the suspect may be armed," *id*.; (9) "the number of persons with whom the police officers must contend at one time," *Jackson,* 206 F.3d at 1170 n.18; and (10) "whether the suspect was resisting or fleeing." *Id*.

The objective reasonableness of the force applied "must be judged on a case-by-case basis 'from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight.'"  *Post v. City of Fort Lauderdale*, 7 F.3d 1552, 1559 (11th Cir. 1993) (quoting *Graham*, 490 U.S. at 396) (alteration supplied). "The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments — in circumstances that are tense, uncertain, and rapidly evolving — about the amount of force that is necessary

18

in a particular situation." *Graham*, 490 U.S. at 396-97.

When the foregoing standards are compared to the facts alleged in plaintiff's complaint, this court concludes that Deputy Fulford's use of force was both objectively unreasonable, and, excessive. Although plaintiff was attempting to flee, nothing alleged in the complaint leads this court to believe that he was an immediate threat to the safety of either defendant Fulford or other persons within the Walmart store, or that deadly force was necessary to apprehend plaintiff. "This circuit has made clear that *some* use of force by a police officer when making a custodial arrest is necessary and altogether lawful, regardless of the severity of the alleged offense." *Durruthy v. Pastor,* 351 F.3d 1080, 1094 (11th Cir. 2003) (emphasis supplied) (citations omitted). Even so, "[u]sing deadly force, without warning, on an unarmed, retreating suspect is excessive." *Salvato v. Miley*, 790 F.3d 1286, 1294 (11th Cir. 2015) (finding that "firing without first warning on a retreating, apparently unarmed suspect is excessive"). The Supreme Court also has spoken to this issue, stating:

> The use of deadly force to prevent the escape of all felony suspects, whatever the circumstances, is constitutionally unreasonable. It is not better that all felony suspects die than that they escape. Where the suspect poses no immediate threat to the officer and no threat to others, the harm resulting from failing to apprehend him does not justify the use of deadly force to do so.

*Tennessee v. Garner*, 471 U.S. 1, 11 (1985).

The Eleventh Circuit has held that when a suspect poses no immediate threat to the officer or others around him, an "officer may not seize an unarmed, nondangerous suspect by shooting him dead." *Perez v. Suszczynski*, 809 F.3d 1213, 1222 (11th Cir. 2016) (citation omitted).  Here, Deputy Fulford confronted plaintiff in a busy Walmart in south Huntsville after recognizing that he was the subject of an outstanding arrest warrant.[17]  Fulford was off duty, not in uniform, and failed to properly identify himself to plaintiff.  After a confrontation that plaintiff described as "aggressive," plaintiff turned and fled.  Deputy Fulford then drew his firearm, aimed, and fired, striking plaintiff in the backside.  Under those circumstances, any reasonable officer would have realized that the force used was unreasonably excessive and, therefore, unconstitutional.  *See Hernandez v. City of Miami*, 302 F. Supp. 2d 1373, 1380 (S.D. Fla. 2004) (holding that the shooing of an unarmed felony suspect in the back as he is running away, and without providing any warning, was unconstitutional under a "common sense" application of the Supreme Court's holding in *Tennessee v. Garner*, *supra* (in turn holding that a police officer can use deadly force to prevent the escape of a fleeing non-violent felony suspect *only when* the suspect poses an immediate threat of serious harm to police officers or others in the immediate vicinity)).  Indeed, the *Garner* Court clearly stated that, "[w]here the

---

[17] Neither the complaint nor any other pleading states the charge(s) contained in the outstanding warrant for plaintiff's arrest.

suspect poses no immediate threat to the officer and no threat to others, the harm resulting from failing to apprehend him does not justify the use of deadly force to do so."  471 U.S. at 11.

Thus, accepting the factual allegations in plaintiff's complaint as true, this court finds that this case is one of "obvious clarity," and general statements of the law made prior to April 15, 2014 placed law enforcement officers on fair warning that the conduct complained of here was unconstitutional. *See Vinyard*, 311 F.3d 1351-52.

Accordingly, Deputy Fulford's motion to dismiss plaintiff's § 1983 individual capacity claim, based upon the defense of qualified immunity, is due to be denied.

## E.   **Plaintiff's State-Law Claims for Negligence or Wantonness**

Plaintiff's state-law claims are alleged in the following paragraphs of his complaint:

> 29.   Defendants the [Morgan County Sheriff's] Department, [Sheriff] Franklin and [Deputy] Fulford negligently or wantonly caused injuries to plaintiff by failing to properly train and/or supervise Defendant Fulford.

> 30.   At all material times, Defendants Franklin and Fulford were working within the line and scope of their employer, the Department, and their actions and/or inactions were negligent, wanton, willful, malicious, fraudulent, in bad faith, beyond their authority and/or under a mistaken interpretation of the law.

> 31.   As a proximate result of Defendants' actions, Plaintiff suffered and continues to suffer from physical injury, anguish,

21

embarrassment, humiliation and emotional distress.

> **WHEREFORE**, Plaintiff requests damages in a reasonable amount as a fact finder may assess and grant other relief to him under the law and his costs of this action against Defendants the Department, Franklin and Fulford.

Doc. no. 1-1 (Complaint), at ECF 5 (alterations supplied, boldface emphasis in original).[18]

In response, the Morgan County Sheriff's Department asserts that it "does not constitute a legal entity capable of being sued,"[19] and Sheriff Franklin and Deputy Fulford contend that they are entitled to claim absolute immunity from plaintiff's state-law claims under the Alabama Constitution.[20]

### 1.    The Sheriff's Department

Federal Rule of Civil Procedure 17(b)(3) provides that the capacity of an entity or a person to be sued should be determined by the law of the state in which the district court sits.[21]   In that regard, the Alabama Supreme Court has held that a county

---

[18] "ECF" is an acronym formed from the initial letters of the name of a filing system that allows parties to file and serve documents electronically (*i.e.*, "Electronic Case Filing").  *See The Bluebook: A Uniform System of Citation*, Rule 7.1.4, at 21 (Columbia Law Review Ass'n *et al.* eds., 19th ed. 2010).  When this court cites to pagination generated by the ECF header, it will, as here, precede the page number(s) with the letters "ECF."

[19] Doc. no. 2 (Sheriff's Department's Motion to Dismiss), ¶ 2.  In addition, the Department contends that plaintiff's complaint "fails to state a claim upon which relief may be granted."  *Id.* ¶ 1.  *See also* doc. no. 3 (Sheriff's Department's Brief), at 2.

[20] *See* doc. no. 5 (Sheriff's Brief), at 3; doc. no. 7 (Deputy Fulford's Brief), at ECF 1.

[21] Federal Rule of Civil Procedure 17(b) provides that:

sheriff's department "is not a legal entity subject to suit." *Ex Parte Haralson*, 853 So. 2d 928, 931 (Ala. 2003); *see also King v. Colbert County*, 620 So. 2d 623, 626 (Ala. 1993) (same); *White v. Birchfield*, 582 So. 2d 1085, 1087 (Ala. 1991) (same).

Federal courts applying Alabama law have ruled accordingly. *See*, *e.g.*, *Dean v. Barber*, 951 F.2d 1210, 1214 (11th Cir. 1992) (affirming dismissal of claim against Jefferson County, Alabama Sheriff's Department, because "Sheriff's departments and police departments are not usually considered legal entities subject to suit") (citing, *e.g.*, *White*, 582 So.2d at 1087); *Russell v. Mobile County Sheriff*, No. Civ. A. 00-0410CBC, 2000 WL 1848470, at *2 (S.D. Ala. Nov. 20, 2000) (holding that "an Alabama sheriff's department is not a legal entity that is subject to being sued").

---

(b) **Capacity to Sue or Be Sued**.  Capacity to sue or be sued is determined as follows:

       (1) for an individual who is not acting in a representative capacity, by the law of the individual's domicile;

       (2) for a corporation, by the law under which it was organized; and

       (3) *for all other parties* [such as the Morgan County Sheriff's Department], *by the law of the state where the court is located*, except that:

          (A) a partnership or other unincorporated association with no such capacity under that state's law may sue or be sued in its common name to enforce a substantive right existing under the United States Constitution or laws; and

          (B) 28 U.S.C. §§ 754 and 959(a) govern the capacity of a receiver appointed by a United States court to sue or be sued in a United States court.  [Emphasis and alteration supplied.]

23

Thus, plaintiff's state-law claims against the Morgan County Sheriff's Department are due to be dismissed.

### 2.    Sheriff Ana Franklin and Deputy Bryant Fulford

The Alabama Supreme Court held in *Parker v. Amerson*, 519 So. 2d 442, 443-45 (Ala. 1987), that a sheriff is an employee of the State, rather than the county that she or he is elected to serve, based upon the state constitutional provision providing that "[t]he executive department shall consist of a governor . . . and a sheriff for each county."  Ala. Const. art. V, § 112 (1901) (alteration and ellipsis supplied).[22]  As an executive officer of the State of Alabama, a sheriff is entitled to claim sovereign immunity from state-law tort claims growing out of the execution of the duties of her or his officer based upon Alabama Constitution Article I, § 14, which states that "the State of Alabama shall never be made a defendant in any court of law or equity."  Ala. Const. art. I, § 14 (1901).  *See, e.g.*, *Parker*, 519 So. 2d at 445 (holding that § 14 "'prohibits a suit against state officers and agents in [both] their official capacity and individually'") (quoting *Gill v. Sewell*, 356 So. 2d 1196, 1198 (Ala. 1978)) (alteration

---

[22] The only exceptions to such immunity are for actions brought against a sheriff:

(1) to compel him to perform his duties, (2) to compel him to perform ministerial acts, (3) to enjoin him from enforcing unconstitutional laws, (4) to enjoin him from acting in bad faith, fraudulently, beyond his authority, or under mistaken interpretation of the law, or (5) to seek construction of a statute under the Declaratory Judgment Act if he is a necessary party for the construction of the Statute.

*Parker v. Amerson*, 519 So.2d 442, 443 (Ala. 1987).  None of those exceptions applies here.

24

supplied); *see also, e.g., Ex parte Burnell*, 90 So. 3d 708, 710-711 (Ala. 2012) ("Based on §§ 14 and 112 of the Alabama Constitution, this Court concluded in *Parker v. Amerson*, . . . that . . . '[a] sheriff is an executive officer of the State of Alabama, who is immune from suit . . . in the execution of the duties of his office'") (ellipses supplied, alteration in original); *Oliver v. Townsend*, 534 So. 2d 1038, 1044 (Ala. 1988) (holding that a sheriff is an employee of the state and, as such, is immune from suit in his official capacity for negligent performance of his statutory duties).

The Alabama Supreme Court reached the same conclusion with regard to tort claims against deputy sheriffs in *Hereford v. Jefferson County*, 586 So. 2d 209, 210 (Ala. 1991) (citing *Mosely v. Kennedy*, 245 Ala. 448, 450, 17 So. 2d 536, 537 (1944) (stating that, "[i]n general, the acts of the deputy sheriff are the acts of the sheriff. The deputy sheriff is the alter ego of the sheriff.") (alterations supplied)).  *See also Carr v. City of Florence, Alabama*, 916 F.2d 1521, 1526 (11th Cir. 1990) (holding that, under Alabama law, a deputy sheriff "is legally an extension of the sheriff," and accordingly, "[i]f the deputy's acts are generally considered the acts of the sheriff, it is logical that those acts should also enjoy the immunity covering the sheriff's own acts") (quoted with approval in *Ex Parte Burnell*, 90 So. 3d 708, 711 (Ala. 2012); *Drain v. Odum*, 631 So. 2d 971, 972 (Ala. 1994); and *Wright v. Bailey*, 611 So. 2d 300, 303 (Ala. 1992)).

It also is clear that Alabama sheriffs and their deputies are entitled to absolute immunity for wanton, willful, malicious, or "bad faith" conduct. *See Ex parte Purvis*, 689 So. 2d 794, 796 (Ala. 1996) (holding that sheriffs and their deputies are entitled to claim under § 14 immunity from a claim from money damages based upon an allegation that the conduct alleged was malicious, willful, wanton, and/or without probable cause); *Alexander v. Hatfield*, 652 So. 2d 1142, 1144 (Ala. 1994) (holding that a deputy sheriff was entitled to absolute immunity from a claim for "bad faith" service of process).

Further, Article I, § 14 immunity is available to sheriffs and their deputies in both their individual and official capacities. *Tinney v. Shores*, 77 F.3d 378, 383 (11th Cir. 1996) ("Under Alabama law, sheriffs and deputy sheriffs, in their official capacities and individually, are absolutely immune from suit when the action is, in effect, one against the state.") (citing *Phillips v. Thomas*, 555 So. 2d 81, 83 (Ala. 1989)).

In conclusion, Sheriff Franklin and Deputy Fulford are entitled to absolute immunity, and plaintiff's state law claims for negligence or wantonness are due to be dismissed.

### III.  CONCLUSION AND ORDERS

In accordance with the foregoing discussion, defendants' motions to dismiss

are GRANTED in part, and DENIED in part; and it is ORDERED, ADJUDGED, and DECREED that all of plaintiff's claims — with the sole exception of plaintiff's § 1983 claim against defendant Bryan Fulford in his individual capacity for violation of plaintiff's Fourth and Fourteenth Amendment rights against the infliction of unreasonable, excessive force in the process of effecting an arrest — are due to be, and the same hereby are, DISMISSED with prejudice.  The costs incurred by defendants Morgan County Sheriff Ana Franklin and the Morgan County Sheriff's Department are taxed to plaintiff.

It is further ORDERED that the stay on discovery and the parties' obligations under Federal Rule of Civil Procedure 26 imposed by the order entered by Magistrate Judge Harwell G. Davis, III, on June 3, 2016 be, and the same hereby is, rescinded and withdrawn.[23]  Counsel for plaintiff, David Horton, and defendant Bryan Fulford are reminded of their obligations under Federal Rule of Civil Procedure 26(f) to confer, as soon as practicable, but in no event later than fourteen days from this date, for the purposes of:  making or arranging for the disclosures required by Fed. R. Civ. P. 26(a)(1); developing a proposed discovery plan that indicates the parties' views and proposals concerning all of the matters addressed in sub-paragraphs (1) through (4) of Fed. R. Civ. P. 26(f); exploring the possibilities for a prompt settlement or

[23] *See* doc. no. 9 (Order).

resolution of the case; and, discussing (and thereafter informing this court) whether it is possible to resolve the sole, remaining claim by mediation.

If counsel for plaintiff and defendant Bryan Fulford are unable to agree upon a date, time, or place for such conference, counsel are hereby ORDERED to meet at 10:00 o'clock a.m. CST on Friday, December 2, 2016, in the chambers of the undersigned judge. If use of the court's chambers is required, counsel should telephone this court's courtroom deputy clerk at (256) 533-9490, at least seven days prior to the required meeting, to advise the court.

**DONE** and **ORDERED** this 7th day of November, 2016.

United States District Judge

28